## Commonwealth *v.* Campbell, Appellant.

Submitted September 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*H. David Rothman,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 18, 1971:

The sole issue presented by this direct appeal from a judgment of sentence following a jury verdict of first degree murder is whether the admission of defendant's confession into evidence was error and violated the principles of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964). We hold that defendant must be granted a new trial, for he was never warned of his absolute right to remain silent. The facts as found by the suppression hearing court are as follows:

On the afternoon of November 29, 1963, one Gust Georges was murdered in his home in Allegheny County. He had operated an amusement business and customarily kept the receipts in his house. When he came home, he was seized, bound, beaten, and eventually mur-

dered by two men attempting to discover the location of the money.

Robert Campbell was arrested on January 30, 1964, along with two other men in connection with the Georges murder. After lengthy questioning, he was released. He was taken into custody again at approximately 1 P.M. on February 5, having been implicated in the Georges murder by one of the other men who had remained in custody. Campbell was questioned intermittently that afternoon by the police. At 4:30 P.M. the question of counsel arose. The lieutenant interrogating Campbell stated: "There is the phone, call the lawyer if you want one."

Campbell replied, "What do I need a lawyer for, I haven't done anything."

Later the same afternoon, Campbell conferred with Swidowski, the man who had implicated him. Campbell then indicated his willingness to make a statement.

Both prior to and following his confession, Campbell was asked whether the confession was voluntary and made of his own free will. To these questions Campbell replied, "Yes." However, at no time during his entire interrogation while in custody was Campbell ever warned of his absolute right to remain silent.

At the suppression hearing, Campbell offered testimony that he had been under the influence of benzedrene pills at the time of his confession. The hearing court specifically disbelieved his testimony on this point and held the confession voluntary and admissible.*

Pursuant to appellant's motion, the suppression hearing judge did not sit at trial. Trial commenced on January 18, 1965, and the jury returned a verdict of

---

* The hearing on the motion to suppress was held on January 12, 1965. Although the motion was apparently denied the next day, no formal disposition appearing in the record was made at that time. An opinion in support of the denial was filed on April 3, 1967.

first degree murder, setting the sentence at life imprisonment. During the trial, appellant was represented by court-appointed counsel. . . . . . . .

Appellant's motions for a new trial and arrest of judgment were argued before the court en banc and subsequently denied on April 25, 1967. A sentence of life imprisonment was imposed on September 22, 1967. No appeal was taken from the judgment of sentence.

In May, 1968, appellant filed a pro se petition for allowance of appeal as though timely filed. We remanded to have the trial court determine whether appellant had waived his right of appeal. The trial court found no waiver had occurred and issued an order on March 31, 1970, allowing appellant to take an appeal.

In this instance the date of appellant's trial determines the legal principles that govern the propriety of his custodial interrogation and confession. Since this trial commenced subsequent to June 22, 1964 and prior to June 13, 1966, the controlling rules are those set forth in *Escobedo v. Illinois,* supra, rather than *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). See *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966) ; *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966) ; *Commonwealth v. Banks,* 429 Pa. 53, 239 A. 2d 416 (1968) ; *Commonwealth v. Vivian,* 426 Pa. 192, 231 A. 2d 301 (1967) ; *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765 (1967).

The holding in *Escobedo* has been summarized by the United States Supreme Court as follows: ". . . the precise holding of Escobedo was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that

lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent . . . .' . . . ." *Johnson v. New Jersey,* supra, at 733-34, 86 S. Ct. at 1781 (brackets in original) (citations omitted).

Our Court has made it clear beyond doubt that, in its view, the initial inquiry under *Escobedo* is whether the accused was warned of his right to remain silent. Thus, in *Commonwealth v. Jefferson,* supra, we said: "It is now settled that under Escobedo, an individual subject to police questioning is not deprived of his constitutional right to counsel unless such assistance is requested and denied. . . . Hence, since Jefferson made no request for counsel, the absence thereof, or an effective waiver of the right thereto, did not ipso facto render testimony of the statements constitutionally inadmissible. But, Jefferson was also not advised of her right to remain silent and this, in our opinion, under the teaching of Escobedo precluded evidentiary use of the statements made to Officer Zevtchin."** Id. at 544, 226 A. 2d at 767 (footnote and citations omitted).

We have reiterated this principle often. For example, in *Commonwealth v. Banks,* supra, we stated: "Under Escobedo, as explicated by Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), it is absolutely essential that before an individual is subjected to police custodial interrogation he must at least be first warned of his constitutional right to remain silent. Otherwise, the evidentiary use of any statements stemming therefrom is constitutionally proscribed. . . ." Id. at 58, 239 A. 2d at 418 (citations omitted). Accord, *Schoepflin v. United States,* 391 F. 2d 390 (9th Cir.

---

** Anything to the contrary in *Commonwealth v. Smith,* 424 Pa. 9, 225 A. 2d 691 (1967), is disapproved.

1968), cert. denied, 393 U.S. 865, 89 S. Ct. 146 (1968); *Commonwealth v. Walker,* 428 Pa. 244, 236 A. 2d 765 (1968); *Commonwealth v. Medina,* 424 Pa. 632, 227 A. 2d 842 (1967); contra, *United States ex rel. Coleman v. Mancusi,* 423 F. 2d 985 (2d Cir. 1970).

The Commonwealth admits that Campbell was not expressly warned of his constitutional right to remain silent. As Campbell was clearly in custody and no longer the subject of only a general investigation at the time his confession was made, *Jefferson* controls. The Commonwealth attempts to escape the rule of *Jefferson* by alleging the holding of that case was limited to its particular facts. However, the above cited authorities indicate the rule's pervasiveness in Pennsylvania.

The Commonwealth also contends that since Campbell knew of his right to counsel, the confession is not tainted. However, *Jefferson* makes clear that, in the view of this Court, *Escobedo* dealt not only with the right to counsel as guaranteed by the Sixth Amendment, but also with the Fifth Amendment right to remain silent. See *Commonwealth v. Jefferson,* supra, at 544, 226 A. 2d at 767. Hence, irrespective of whether Campbell knew of his right to counsel, the failure of the police conducting the interrogation to advise him of his absolute right to remain silent renders any statement made as a result of that interrogation inadmissible. That the right to remain silent is the sole warning required by *Escobedo* does not in any way diminish the importance of that warning or make a confession obtained in the absence of such a warning any more admissible into evidence.

The judgment of sentence of the Court of Common Pleas of Allegheny County is vacated, and a new trial is ordered.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the decision of this case.